363 So.2d 166 (1978)
Kenneth Paul KOVARNIK, Appellant,
v.
ROYAL GLOBE INSURANCE CO. et al., Appellee.
No. 77-983.
District Court of Appeal of Florida, Fourth District.
October 11, 1978.
*167 Mark P. Lang, T.G. LaGrone, Orlando, for appellant.
J. Richard Caldwell, Jr. of Pitts, Eubanks, Ross & Rumberger, Orlando, for appellee.
DAUKSCH, Judge.
The plaintiff in the lower court seeks our review of a summary final judgment in favor of the defendant in a suit by an *168 insured against his no-fault automobile liability insurance carrier for recovery of personal injury protection benefits. We find that there exists a genuine issue of material fact precluding the entry of summary judgment and we therefore reverse.
The plaintiff was injured during the course of his employment as a truck driver when the company car he was operating was struck by another vehicle. The benefits he received, by way of "wash out," from his employer's workmen's compensation carrier were not sufficient to cover his losses, so he sent a claim to his own no-fault carrier for personal injury protection benefits. The carrier's claims examiner replied by letter in the following manner:
This will acknowledge receipt of your letter of January 27 (sic), 1976 addressed to our New York Office.
As I review the No-Fault form which you have forwarded, it appears that your client was injured during the course of her (sic) employment. At least that seems to be the way she (sic) answers that particular question on the P.I.P. application.
For that reason, of course, we cannot entertain this as a No-Fault claim since Workman's Compensation would be responding to this claim.
Should you have any information that I don't have which would indicate otherwise, I would appreciate your contacting me.
The plaintiff then mailed his final letter to his no-fault carrier confirming receipt of what he interpreted to be a denial of his no-fault claim and advising that he now had no alternative but to proceed with his own remedies. On the same day the plaintiff settled with the tortfeasor without having given prior notice to, or having received consent from, the plaintiff's own no-fault carrier. Shortly thereafter, the plaintiff's no-fault carrier did acknowledge its coverage as excess over the workmen's compensation benefits received by plaintiff, but upon later notification that the claim against the tortfeasor had been settled the carrier immediately advised that it would not honor the plaintiff's claim for P.I.P. benefits. The ensuing litigation resulted in a summary final judgment in favor of the no-fault carrier, from which plaintiff appeals.
We note initially that plaintiff's no-fault carrier would not be justified in denying P.I.P. benefits to the plaintiff merely because plaintiff may have also been entitled to workmen's compensation benefits. See Comeau v. Safeco Ins. Co. of America, 356 So.2d 790 (Fla. 1978); Davis v. Travelers Imdemnity Co., 356 So.2d 794 (Fla. 1978). Although a claimant cannot receive both workmen's compensation benefits and P.I.P. benefits in such a manner as to be over compensated for the same injury; still workmen's compensation benefits received by a claimant do not decrease the total amount of P.I.P. coverage available under the policy. If workman's compensation benefits are available, P.I.P. benefits are still primary; however to the extent that payments of workmen's compensation are made, P.I.P. benefits are supplemental until either the injured party has been fully compensated or until the P.I.P. carrier has paid its policy limits. Most importantly here, is that P.I.P. benefits and workmen's compensation benefits are concurrent and exhaustion of workmen's compensation benefits is not a prerequisite to receiving P.I.P. benefits. Fine v. Travelers Ins. Co., 342 So.2d 848 (Fla.3d DCA 1977); Charter Oak Fire Ins. Co. v. Regalado, 339 So.2d 277 (Fla.3d DCA 1976). Therefore the defendant's initial response to plaintiff's claim for P.I.P. benefits, if it could be reasonably interpreted as an unequivocal denial of coverage, would be a wrongful denial of coverage.
The final summary judgment below was predicated on plaintiff's failure to notify and receive consent from his no-fault carrier before settling with and releasing the third party tortfeasor. The cases cited by the no-fault carrier in support of the lower court's judgment involved specific policy provisions ("consent clauses") which excluded coverage when the insured settled with the tortfeasor without the carrier's *169 prior consent, or when the insured did anything to prejudice the carrier's subrogation rights. However in the present case, the parties stipulate that the insurance policy contained no consent clause similar to that described above. This being so, we are unable to follow the reasoning of the trial court in concluding that the plaintiff breached a duty to notify his no-fault carrier before settling with the tortfeasor.[1] No statutory law has been cited which requires consent by the no-fault carrier before the insured settles with the tortfeasor. It seems as if the lower court has injected an exclusionary "consent clause" into this policy as a matter of law. However, we base our reversal on a narrower issue.
Assuming that a duty does exist to notify the carrier before settling with the tort-feasor, even in the absence of a policy "consent clause," we are faced with the question of what effect the carrier's wrongful denial of coverage might have on such a duty. Although the question is one of first impression in Florida, the jurisdictions which have considered the matter have uniformly held that once the insurance carrier has denied coverage, it has waived any requirement (or is estopped from asserting any requirement) of prior notice and consent before the insured settles with the tort-feasor. Employers Nat'l Ins. Co. v. Parker, 286 Ala. 42, 236 So.2d 699 (1970); Porter v. Empire Fire and Marine Ins. Co., 12 Ariz. App. 2, 467 P.2d 77 (Ct.App. 1970), vacated on other grounds, 106 Ariz. 274, 475 P.2d 258 (1970), modified on other grounds, 106 Ariz. 345, 476 P.2d 155 (1970); Calhoun v. State Farm Mut. Auto Ins. Co., 254 Cal. App.2d 407, 62 Cal. Rptr. 177 (1st DCA 1967); Shook v. Hertz Corp., 349 A.2d 874 (Del. Super. Ct. 1975); Porter v. Travelers Indemnity Co., 313 So.2d 641 (La. 3d CCA 1975), cert. denied, 318 So.2d 51 (La. 1975); Gay v. Preferred Risk Mut. Ins. Co., 114 N.H. 11, 314 A.2d 644 (1974); Vanguard Insurance Co. v. Polchlopek, 18 N.Y.2d 376, 275 N.Y.S.2d 515, 222 N.E.2d 383 (1966); Childs v. Allstate Ins. Co., 237 S.C. 455, 117 S.E.2d 867 (1961). See generally 25 A.L.R.3d 1275, 1291. (We note that each of these cases involved specific consent clauses in the policy of insurance). The underlying rationale throughout this line of cases is that an insurer may not repudiate a policy, deny liability thereon, and at the same time be permitted to stand on the failure to comply with a provision inserted in the policy for its own benefit. Some of these cases speak in terms of implied waiver, while others speak in terms of equitable estoppel. Whatever the nomenclature, these cases are premised on equitable principles which we find to be applicable to the case under consideration.
The insurance carrier maintains, and the lower court apparently agreed, that its initial response to the plaintiff's claim for P.I.P. benefits cannot be reasonably interpreted as an outright denial of coverage. We would agree that the carrier's initial response is not so unequivocal that, as a matter of law, it should be held to be a wrongful denial of coverage. But by the same token, reasonable minds could differ and we cannot say that, as a matter of law, plaintiff's interpretation of this letter as being a denial of coverage was unreasonable (especially when all permissible inferences are viewed in a light most favorable to the plaintiff on defendant's motion for summary judgment.) Herein lies the genuine issue of material fact which precludes summary judgment and mandates our reversal. If the plaintiff reasonably relied on this letter as a denial of coverage (which denial would have been wrongful as discussed above), then the principles of equitable estoppel would apply under the case authorities cited above and the defendant could not rely on plaintiff's failure to notify before settling with the tortfeasor. Under the facts of this case the issue is one for determination by the trier of fact.
*170 Accordingly the final summary judgment is reversed and the cause is remanded for further proceedings consistent herewith.
REVERSED AND REMANDED.
DOWNEY, C.J., and MOORE, J., concur.
NOTES
[1] Even when such a policy provision does exist, it is strictly construed against the insurance company as the draftsman since it tends to discourage settlements and avoid liability. Carter v. American Fire and Casualty Co., 219 So.2d 462 (Fla. 4th DCA 1969); Kaplan v. Phoenix of Hartford Ins. Co., 215 So.2d 893 (Fla. 3d DCA 1968), cert. denied, 220 So.2d 365 (Fla. 1969).