[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 27 2000
THOMAS K. KAHN
CLERK

_____

No. 99-12844
Non-Argument Calendar

_____

D. C. Docket No. 96-01261-CV-JAL

ROYAL INSURANCE COMPANY,

Plaintiff-Appellant,

versus

LATIN AMERICAN AVIATION SERVICES, INC.,
MILLON AIR CARGO, INC.,

Defendants-Appellees.

UNDERWRITERS,

Third-Party Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 27,  2000**)

Before COX and WILSON, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

This action arises from the October 22, 1995 theft of computer parts from a warehouse located near Miami International Airport. Royal Insurance Company ("Royal") insured the computer parts pursuant to an insurance policy purchased by United Information Systems, Inc. ("UIS"), the owner/exporter of the computer parts, which were intended for export to Brazilian companies. This appeal involves the unsuccessful attempts by Royal to recover, as subrogee, its payment to its insured on the theft property claim. Specifically, Royal appeals the grant of summary judgment in favor of an impled third-party defendant, the insurer of the airline slated to deliver the stolen cargo to Brazil. The appeal turns on whether at the time of the theft, the cargo was in the "course of carriage." The magistrate judge held that it was not. We affirm.

To properly understand this appeal, a brief overview of UIS's export procedure is helpful. UIS is in the business of purchasing computer parts for export to Brazilian companies. Once UIS had the cargo ready for shipment, it contacted Millon Air Cargo ("MAC"), an airfreight forwarding company, to obtain air waybills. When these air waybills were prepared and signed, the cargo would then be delivered to Latin American Aviation Services, ("LAAS"), MAC's receiver or handling agent. The cargo remained in LAAS's warehouse, however, until an aircraft became available to transport the cargo. At that point, the cargo was "palletized" – wrapped in plastic

2

sheets and netting -- and transferred to an aircraft supplied by Millon Air, Inc., ("MAI").

In this case, computer parts valued at $308,496 were stolen from the LAAS warehouse. After the theft, Royal paid UIS's claim for the loss and brought a subrogation claim against LAAS and MAC. A non-jury trial was conducted by consent before a magistrate judge who entered final judgment in favor of Royal in the amount of $358,659.17. ("Order I").

When Royal was unsuccessful in collecting on its judgment against LAAS and MAC, it initiated supplementary proceedings and impled as third party defendants certain insurers, collectively British Aviation Insurance Company, Limited ("Underwriters"). This action against Underwriters is the proceeding now before us.

Underwriters provides aircraft liability insurance to Millon Air Inc., ("MAI"), the airline slated to deliver the computer parts to Brazil. MAI is not a party to this action. Royal's theory of recovery is that LAAS and MAC are insured as "associated companies" of MAI under the policy and are therefore entitled to indemnification from Underwriters for the judgment entered against them. The magistrate judge granted Underwriters summary judgment on the ground that its policy did not insure MAI for this loss, so that of course, it did not insure any "associated companies" of MAI.

3

MAI's policy contains a cargo legal liability inclusion endorsement which insures MAI's liability for loss of cargo "during the course of carriage."

> The Insurers will indemnify the Insured in respect of all sums which the Insured shall become legally liable to pay as compensatory damages in respect of Loss of or damage to Cargo during the course of carriage by the Insured and whilst in the care, custody, or control of the Insured whether in the air or on the ground including while such Cargo is being loaded onto or unloaded from the Aircraft.
>
> Coverage hereunder attaches from the time of acceptance of such Cargo by the Insured and ceases upon delivery by the Insured at the final destination or when handed over to a succeeding carrier.

The magistrate judge held that the loss here did not occur while the property was "in the course of carriage." We affirm for two reasons.

First, although the term "carriage" is nowhere defined in the policy, the question Royal raises about the interpretation of "course of carriage" had already been decided by the magistrate judge in Order I. That determination is binding on Royal as the law of the case. *See United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997)("Under the law-of-the-case doctrine, an issue decided at one stage of a case is binding at later stages of the same case.").

In Order I, the magistrate judge was called on to determine whether MAC and LAAS were entitled to a limitation on their liability, a decision dependent upon

whether there was "carriage" under the controlling air waybill at the time of the theft. Following the argument made by Royal, the magistrate judge stated that the term carriage was unambiguous and attached to it its ordinary meaning: "'[t]he act or process of transporting or carrying' or '[t]ransportation of goods, freight or passengers,'" *citing American Heritage Dictionary* 206 (New Coll. ed. 1981); *Black's Law Dictionary* 214 (6th ed. 1990). The magistrate judge made the factual finding that "the stolen goods were not ready for transport. They were just stored, waiting to be palletized." In its conclusions of law, the magistrate judge determined as a matter of fact and law that

> [a]t the time of the theft, MILLON and LAAS had stored the cargo in the warehouse pending palletization and preparation for transport to Brazil. Order 15. Given its ordinary and unambiguous meaning, "carriage" had not begun. ...This court finds that at the time of the robbery, the defendant(s) were engaged in "services incidental" to carriage, and not carriage, itself."

No appeal was taken from Order I. The magistrate judge reiterated this definition and factual findings in the second order. While there are exceptions to the law of the case doctrine, see *Escobar-Urrego*, 110 F.3d at 1561, *quoting White v. Murtha*, 377 F.2d 428,431-32(5th Cir. 1967)(footnotes omitted), none apply here: no new evidence has been brought to the court's attention, there has been no change in

5

the law, and "the district court's decision was not a clear error" that "would work manifest injustice."

Second, we hold the district court's decision on the merits was correct. Royal argues that "course of carriage" encompasses a broader range of activity than the mere term "carriage." The magistrate court found, however, that the "goods were not ready for transport. They were just stored, waiting to be palletized." There was no error in the court's determination that there was no issue of fact on this point.

The magistrate judge correctly determined that the only way to reach Royal's interpretation of the contract language is to read "and" as "or" so that the relevant phrase is disjunctive. The clause would then provide that Underwriters agrees to indemnify their insured for loss of cargo that occurs "either during the course of carriage by the Insured *or* whilst in the care, custody or control of the Insured...." An insurance policy must be construed in accordance with its plain language. *See Prudential Prop. and Cas. Ins. Co. v. Swindal*, 622 So.2d 467, 470 (Fla. 1993). Courts are not free to rewrite an insurance policy or to add terms or meaning to it. *See Mansfield Indus. Coatings, Inc. v. Employers Nat'l. Ins. Corp.*, 557 So.2d 221 (Fla. 1st DCA 1990). *See also Crown Life Ins. Co. v. Garcia*, 424 So.2d 893, 894 n.1 (Fla. 3d DCA 1982)("[T]he conclusion that the policy terms provide coverage can be achieved only by changing the disjunctive word 'or,' between the two separate

6

exclusionary definitions of 'disabled,' to the conjunctive 'and.'"). *Accord Prudential Ins. Co., of America v. Bellar*, 391 So.2d 737 (Fla. 4th DCA 1980). "Courts are forbidden, however from engaging in any such rewriting process, even in the guise of 'interpreting' an insurance policy against the company." *Garcia,* 424 So.2d at 894 n.1 (quoting *Griffin v. Speidel*, 179 So. 2d 569 (Fla. 1965)).

The other language in the policy is not inconsistent with this interpretation. Neither the temporal limitation of the coverage (coverage attaches from the insured's acceptance to delivery or handing over to another carrier), nor the condition requiring that the cargo in the care of the insured "be kept in secure premises at all times other than during actual air transit," address the period during which liability may attach. The goods were not in the course of carriage when stolen and the loss does not fall within the coverage provided by Underwriters.

This decision makes it unnecessary to rule on Royal's appeal from the denial of its summary judgment motion arguing that LAAS and MAC were "associated companies" with MAI under the policy. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Mayor's Jewelers of Fort Lauderdale, Inc.*, 465 F.2d 317 (5th Cir. 1972)(companies associated because significant integration of both managerial and financial control); *Firemen's Fund Ins. Co. v. American Int'l Ins. Co. of Puerto Rico, Inc.,* 109 F.3d 41 (1st Cir. 1997)(twenty percent ownership of company does not

constitute "associated").   The record tends to support the magistrate court's determination that there is an issue of material fact as to the relationships of the companies, precluding summary judgment.

**AFFIRMED.**