[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13247

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 14, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-22988-CV-RWG

BUCKLEY TOWERS CONDOMINIUM, INC.,

Plaintiff-Appellee-
Cross-Appellant,

versus

QBE INSURANCE CORPORATION,

Defendant-Appellant-
Cross-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(September 14, 2010)

Before BARKETT and MARCUS, Circuit Judges, and HOOD,[*] District Judge.

_____

[*] Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

MARCUS, Circuit Judge:

Appellee/cross-appellant Buckley Towers Condominium, Inc. (Buckley Towers), the owner of a pair of condominium buildings in Miami-Dade County, Florida, purchased hurricane insurance from appellant/cross-appellee QBE Insurance Corp. (QBE), but when Hurricane Wilma struck South Florida in October 2005, QBE did not pay. Buckley Towers sued and, after trial in federal district court, a jury awarded it nearly $20 million in damages. At issue in this case is whether the district court erred in denying QBE's post-trial motion for judgment as a matter of law, motion to amend or alter the judgment, and motion for a new trial.

The insurance contract clearly required that Buckley Towers make actual repairs before seeking Replacement Cost Value (RCV) and law and ordinance damages. Although Buckley Towers made no such repairs, the district court held that the doctrine of prevention of performance permitted Buckley Towers to recover RCV and law and ordinance damages. QBE asserts that this was reversible error under Florida law. We agree, and hold that Buckley Towers had no right to recover these damages under the policy. We also agree with QBE that the contract between these parties did not allow for the provision of prejudgment interest, and hold that it was error for the district court to award it as well.

2

QBE further claims that it was error for the district court to allow Actual Cost Value (ACV) damages, because there was no evidence that Buckley Towers ever submitted a proper claim for ACV damages. As we read the trial record, however, there was sufficient evidence to sustain the jury's award as to ACV damages. Moreover, it was not an abuse of discretion for the district court to deny QBE's motion for a new trial on the basis of juror misconduct. Accordingly, we reverse the district court's judgment in part, affirm it in part, and remand in part for further proceedings consistent with this opinion.

I.

Hurricane Wilma hit South Florida in October 2005, badly damaging Buckley Towers, a pair of condominium buildings in Miami-Dade County. Buckley Towers first contacted QBE about the loss it sustained in February 2006, four months after the hurricane hit. Buckley's public adjuster, Denise Valderamma, sent a letter to QBE asking for an "advance payment due to the amount of major and structure damage the property suffered due to Hurricane Wilma accordingly [sic] to the policy provisions and endorsements."

Buckley submitted its first Sworn Proof of Loss in April 2006. When QBE rejected the first claim due to various errors, Buckley Towers in June 2006 submitted a second Sworn Proof of Loss, consisting of a form that contained

3

information applicable to both RCV damages and ACV damages. Buckley Towers designated the "Full Cost of Repair or Replacement" as $5,187,388.03, the "Applicable Depreciation" as $12,503.43, and the "Actual Cash Value Loss" as $5,174,885.50. Buckley Towers designated the "Net Amount Claimed" as $4,238,708.50. QBE never paid the claim, nor fully rejected it, construing it to be a demand for RCV damages and, therefore, not due until repairs were complete.

After determining that QBE was unlikely to pay its claim, Buckley Towers sued QBE in the United States District Court for the Southern District of Florida, invoking its diversity jurisdiction and seeking ACV damages, RCV damages, law and ordinance damages, and a declaratory judgment. Buckley Towers conceded that it had not completed repairs before requesting damages and that repair was required under the contract before claiming RCV damages. Nevertheless, the trial court instructed the jury that QBE may be obliged to pay RCV damages if it found that QBE had prevented Buckley Towers' performance under the RCV provision of the contract by denying ACV damages.

After trial, the jury found that Buckley Towers had submitted a request for ACV damages and awarded the building $11,395,665 in ACV damages. Pursuant to the trial court's prevention of performance instruction, the jury also awarded Buckley Towers $18,708,608 for RCV damages. The jury also awarded Buckley

Towers $803,500,000 in law and ordinance damages per building. The district court entered final judgment for Buckley Towers in the amount of $19,379,431, the sum of RCV damages and law and ordinance damages. After Buckley Towers moved for an amended judgment to add prejudgment interest, the district court added $5,607,319.87 in interest to the jury award, amounting to a final award of $24,986,750.87. QBE moved for a judgment as a matter of law as to RCV damages, ACV damages, and law and ordinance damages, moved for a new trial on the basis of juror misconduct, and moved to alter or amend the judgment to remove the prejudgment interest. The district court denied all of QBE's motions and this timely appeal ensued.

II.

QBE argues that the district court's most fundamental error was applying the doctrine of prevention of performance, thereby allowing Buckley Towers to claim RCV damages, even though, under the express terms of the contract, Buckley Towers had failed to repair or replace the damaged property. Under Florida law, the doctrine of prevention of performance may be applied when one party to a contract prevents another from performing its obligations under a contract; it bars the preventing party from availing himself of the other party's nonperformance. Knowles v. Henderson, 22 So. 2d 384, 385-86 (Fla. 1945). However, we think the

5

district court erred in applying prevention of performance in this case for several reasons.

In the first place, the insurance contract unambiguously requires the insured to repair its property before receiving RCV damages. The insurance contract specifically provides that QBE "will not pay on a replacement cost basis for any loss or damage (1) Until the lost or damaged property is actually repaired or replaced; and (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage." Condominium Association Coverage Form, provision G(3)(d). **[DX-1, p. 13-14 out of 14]** The insurance contract contains no allowances for advance payments to fund repairs. Both parties agree, and the record undeniably establishes, that Buckley Towers never completed repairs and, thus, would be barred from recovering RCV damages under the plain terms of the contract. We must accept the unambiguous terms of this contract because "[i]nsurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So. 2d 467, 470 (Fla. 1993).

Applying the doctrine of prevention of performance in this case would impermissibly rewrite the insurance contract on the equitable theory that it would be too costly for Buckley Towers to comply with the terms of the agreement.

Under Florida's binding law, however, courts are not free to rewrite the terms of an insurance contract and where a policy provision "is clear and unambiguous, it should be enforced according to its terms." Acosta, Inc. v. Nat'l Union Fire Ins. Co., 39 So. 3d 565, 573 (Fla. Dist. Ct. App. 2010) (citation and quotation marks omitted). Allowing Buckley Towers to claim RCV damages without repairing or replacing entirely removes the plaintiff's obligations under the Replacement Cost Value section of the contract. The parties freely negotiated for that contractual provision and it is not the place of a court to red-line that obligation from the contract.

Nor is it a defense to say that it would be costly for Buckley Towers to comply with the insurance contract as written. "Inconvenience or the cost of compliance [with contractual terms], though they might make compliance a hardship, cannot excuse a party from the performance of an absolute and unqualified undertaking to do a thing that is possible and lawful." N. Am. Van Lines v. Collyer, 616 So. 2d 177, 179 (Fla. Dist. Ct. App. 1993). Although Buckley Towers may be unable to receive the full range of benefits of their contract without an advance payment under Florida law, that cost and inconvenience may not relieve them of repairing the building prior to claiming RCV damages.

Indeed, the Florida courts have upheld similar contracts that expressly require repair before claiming RCV damages. The Florida Supreme Court has explained that, with contracts such as the one in this case, replacement cost damages do not "arise until the repair or replacement has been completed." Ceballo v. Citizens Prop. Ins. Corp., 967 So. 2d 811, 815 (Fla. 2007) (citation and quotation marks omitted). See also State Farm Fire and Cas. Co. v. Patrick, 647 So. 2d 983, 983 (Fla. Dist. Ct. App. 1994) (per curiam). And, by example, the First District Court of Appeal recently held that a trial court had erred by allowing an insured homeowner who had chosen to sell his property rather than repair the structures appurtenant to the house to claim RCV damages instead of ACV damages for the structures. Citizens Prop. Ins. Corp. v. Hamilton, -- So. 3d --, No. 1D09-4128, 2010 WL 2671808, *8 (Fla. Dist. Ct. App. July 7, 2010).

Buckley Towers has been unable to cite us to any Florida case in a first-party insurance action that has employed the doctrine of prevention of performance to vitiate a plaintiff's contractual obligation to repair or replace damaged property before applying for RCV damages. The doctrine of prevention of performance applies, generally, when a party to a contract is ready, willing and able to perform, but the other party prevents him from performing by imposing obstacles not contemplated within the contract. See, e.g., Walker v. Chancey, 117 So. 705, 707-

8

08 (Fla. 1928) (applying the doctrine of prevention of performance where an owner sold a house on which a broker had secured another "ready, willing and able" buyer, preventing the broker from collecting the commission); Crane v. Barnett Bank of Palm Beach County, 698 So. 2d 902, 904 (Fla. Dist. Ct. App. 1997) (explaining that "the bank prevented the borrower's performance by refusing the borrower's payments (on advice of counsel) until the borrower's wife signed mortgage modification documents although she was not legally obligated to do so"). But there is no indication that Florida courts would apply the doctrine to change the basic terms of the underlying contract. And it is not the role of a federal court, sitting in diversity jurisdiction, and bound by the command of Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), to do so without some palpable foundation in the law of Florida.

Buckley Towers suggests, however, that two suretyship cases might provide the necessary precedent for employing prevention of performance in this case: Continental Casualty Co. v. Reddick, 196 So. 2d 239 (Fla. Dist. Ct. App. 1967), and Allied Fidelity Insurance Co. v. Scott, 516 So. 2d 315 (Fla. Dist. Ct. App. 1987).[1] We are not persuaded that these cases apply. In the two suretyship cases

---

[1] Buckley Towers also says that Kovarnik v. Royal Globe Insurance Co., 363 So. 2d 166 (Fla. Dist. Ct. App. 1978), provides precedent for the application of the doctrine of prevention of performance in an insurance contract. However, Kovarnik is not an application of prevention of performance, but rather another equitable doctrine. In Kovarnik, the insurer denied coverage.

cited to us, the plaintiffs had prevented the "ready, willing and able" defendant, Reddick, 196 So. 2d at 241, from performing under the contract by imposing obstacles outside of the scope of the parties' agreement. See id. at 240 (plaintiff prevented defendant from performing unless he first secured a $50,000 bond, something he was not obligated to do under the contract); Scott, 516 So. 2d at 317 (plaintiff prevented defendant from performing by removing files from his office). In sharp contrast, here, QBE was enforcing its express rights under the contract. Whatever obstacles the language of this policy created, the obstacles were not imposed on account of conduct falling outside the scope of the parties' agreement itself. The insurance contract clearly provides for the possibility of a lawsuit to determine the right to payment. What's more, the insurance contract provides for another means of seeking reimbursement for hurricane damage, without any need to repair or replace anything -- the requirement of the insurer to honor a properly made ACV claim. But nothing in this insurance contract, or in Florida law for that matter, requires QBE to fund the repairs before the building claims RCV damages. In short, as we read Florida law, the doctrine of prevention of performance may not

---

The insured then settled with the third-party tortfeasor, without first informing the insurer. When the insurer sought to rely upon that failure to notify in a subsequent suit between the insurer and insured, the court held that the insurer was estopped from benefitting from the insured's noncompliance with the terms of the insurance contract after the insurer's denial of her claim. Id. at 169. But the insurer's denial of the claim did not prevent the insured from complying with a condition precedent in the contract: the denial did not prevent the insured from telling the insurer about the settlement.

be wielded as a sword in a case like this one where the insured is required first to meet its obligations to repair under the policy provision.

In the absence of any square Florida precedent to the contrary, we hold that it was error for the district court to instruct the jury that they could award Buckley Towers RCV damages notwithstanding the clear terms of the insurance contract under the doctrine of prevention of performance. QBE was entitled to a grant of its motion for judgment as a matter of law on replacement cost value damages.

III.

Having held that the doctrine of prevention of performance cannot excuse Buckley Towers from its obligation to repair to obtain RCV damages, it follows that Buckley Towers' award of law and ordinance damages must also be reversed. Under the terms of the insurance contract, Buckley Towers is not entitled to law and ordinance damages unless "such damage results in enforcement of the ordinance or law." Ordinance or Law Coverage, Provision B.2. **[DX-1].** Nevertheless, the district court denied QBE's motion for a judgment as a matter of law, again on the theory that QBE had prevented Buckley Towers from repairing by failing to provide ACV damages. However, under Florida law and under the terms of the contract, Buckley Towers is not entitled to law and ordinance damages because it never repaired the property and never actually incurred increased

11

damages due to the enforcement of laws or ordinances. Ceballo, 967 So. 2d at 815 (holding that an insured was required by the insurance company to repair property and "incur[] an additional loss in order to recover" law and ordinance damages); Citizens Prop. Ins. Corp. v. Ceballo, 934 So. 2d 536, 538 (Fla. Dist. Ct. App. 2006) (same). For the reasons we have already explained, the doctrine of prevention of performance provides no excuse from Buckley Towers' obligation to perform its duties under the contract.[2]

## IV.

It was also error to award Buckley Towers prejudgment interest contrary to the express terms of the insurance contract. Although the district court's factual findings in calculating damages are ordinarily reviewed for clear error, where the error inheres in the court's interpretation of the insurance policy, we review the calculation of damages de novo. Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n, 117 F.3d 1328, 1339 (11th Cir. 1997).

Under Florida law, "for the purpose of assessing prejudgment interest, a claim becomes liquidated and susceptible of prejudgment interest when a verdict

---

[2] Our holdings on RCV damages and law and ordinance damages dispose of two other grounds for appeal that QBE has raised. First, we need no longer answer whether the law and ordinance damages are duplicative of RCV damages. Neither has been sustained. Second, we need not address whether the district court's jury instruction about prevention of performance entitled QBE to a new trial. The jury instruction was limited to RCV and law and ordinance damages; it did not infect the remainder of the jury verdict.

12

has the effect of fixing damages as of a prior date." Taylor v. N.H. Ins. Co. of Manchester, 489 So. 2d 207, 207 (Fla. Dist. Ct. App. 1986). Not surprisingly, Florida law holds that prejudgment interest is governed by the terms of the insurance contract. Columbia Cas. Co. v. Southern Flapjacks, Inc., 868 F.2d 1217, 1219-20 (11th Cir. 1989). This insurance contract provides that damages are only due either "(1) 20 days after [QBE] receives the sworn proof of loss, and [QBE] has reached agreement with [Buckley Towers]" on the amount of loss, or (2) "within 30 days after [QBE] receive[s] a sworn proof of loss and [t]here is an entry of a final judgment." Florida Changes, Provision D. **[DX-1].** Because neither of those conditions were satisfied until final judgment, Buckley Towers is not entitled to prejudgment interest under Florida law. Citizens Property Ins. Corp v. Hamilton, -- So. 3d --, No. 1D09-4128, 2010 WL 2671808, *9 (Fla. Dist. Ct. App. July 7, 2010) (holding that the trial court had erred in awarding prejudgment interest where the contract allowed "the insurer 60 days from the date a judgment is entered to make a loss payment").

V.

As for ACV damages, however, we conclude that the jury had sufficient evidence from which to reasonably find that Buckley Towers had made an ACV damages request, and that it was entitled to ACV damages. According to QBE, the

13

district court erred in denying its motion for a judgment as a matter of law concerning the ACV damages because Buckley Towers' paperwork showed that they were actually claiming RCV damages. QBE first points to Valderamma's February letter, asking for an "advance payment." Because ACV damages are due before repair, the term "advance" implies, the appellant argues, that Buckley Towers were seeking damages not yet due, that is, RCV damages. QBE also says that the second Sworn Proof of Loss was inadequate as an ACV claim because Buckley Towers had entered a sum on the Proof of Loss form in the category "Full Cost of Repair or Replacement," a category only relevant to RCV claims. Finally, QBE claims that the absence of any appropriate depreciation on the second Sworn Proof of Loss indicated that the proof of loss was actually an RCV claim.

We review the denial of a motion for a judgment as a matter of law de novo and apply the same standard as the district court. Mee Indus. v. Dow Chem. Co., 608 F.3d 1202, 1210-11 (11th Cir. 2010). "The motion should be denied only if reasonable and fair-minded persons exercising impartial judgment might reach different conclusions." Id. at 1211.

Although QBE has shown that Buckley Towers may have submitted an inartfully drafted claim for damages, we think the jury could have found on this record that Buckley Towers sought ACV damages. In the first place, even if we

14

read the letter to be a demand for "advance" RCV damages, the jury was not precluded from finding that the second Sworn Proof of Loss -- the legally operative document -- was a demand for ACV damages.

Second, even though depreciation is necessarily part of actual cash value damages, Goff v. State Farm Fla. Ins. Co., 999 So. 2d 684, 689 (Fla. Dist. Ct. App. 2008), the insurance contract does not affirmatively obligate the insured to include depreciation in its initial proof of loss. Instead, depreciation may be calculated as part of the appraisal process. Am. Reliance Ins. Co. v. Perez, 689 So. 2d 290, 292 (Fla. Dist. Ct. App. 1997) ("The dollar amount of value, cost, and depreciation are all factors to be considered through accepted appraisal practices."). Nor did the insurance contract clearly explain that depreciation was an element of actual cash value; nowhere did it define the term "actual cash value." Imposing on Buckley Towers the affirmative obligation to set forth depreciation in the Sworn Proof of Loss would add a new term to the insurance contract, which we are not free to do. Royal Ins. Co. v. Latin Am. Aviation Servs., Inc., 210 F.3d 1348, 1351 (11th Cir. 2000).

Moreover, and most significantly, Buckley Towers' second Sworn Proof of Loss included a typewritten entry for cash value loss in the amount of $5,174,885.50 next to the category "Actual Cash Value Loss," arguably putting the

15

insurance company on notice that the insured was seeking actual cash value from QBE. In short, a jury could find, as it plainly did, that Buckley Towers made an ACV claim. The district court properly denied QBE's motion for judgment as a matter of law on that theory of damages.

VI.

QBE also claims that the trial court erred in denying a new trial on the ground of juror misconduct, because a juror failed to reveal potentially relevant information during voir dire on his employment, insurance claims, litigation history and condominium ownership. We review the district court's denial of a motion for a new trial for an abuse of discretion. St. Luke's Cataract & Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1200 n.16 (11th Cir. 2009), and its factual findings for clear error. Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1169 (11th Cir. 2010). We find no abuse of discretion here.

After trial, QBE investigated the juror and moved for a new trial on the basis of alleged misconduct. The district court conducted an evidentiary hearing to investigate the allegations. At that hearing, in response to the judge's questions, the juror explained under oath various omissions and alleged inconsistencies found in his voir dire. After observing the juror, the district court concluded that the

16

juror had made honest mistakes and omissions because he misunderstood some of the questions and others were not stated with sufficient clarity. The district court also found that none of the responses, had they been given in a more fulsome manner at voir dire, would have been grounds to excuse the juror. On this record, we cannot say that the district court clearly erred in fact-finding or abused its considerable discretion in denying QBE's motion for a new trial. See, e.g., United States v. Carpa, 271 F.3d 962, 967 (11th Cir. 2001) ("To obtain a new trial for juror misconduct during voir dire, a party must: 1) demonstrate that a juror failed to answer honestly a material question on voir dire, and then 2) show that a correct response would have provided a valid basis for a challenge for cause.").[3]

## VII.

In sum, we reverse the district court's denial of QBE's motion for judgment as a matter of law as to Replacement Cost Value damages and law and ordinance damages, but affirm its denial of QBE's motion for judgment as a matter of law as to Actual Cash Value Damages. We also hold that the district court erred in

---

[3] Buckley Towers raises two issues on cross-appeal. First, it claims that the district court erred by dismissing Buckley Towers' claim that QBE breached an implied warranty of good faith and fair dealing. Second, it says that the district court erred by dismissing the part of its declaratory judgment claim pertaining to QBE's violation of Fla. Stat. § 627.701(4)(a), a law that regulates the typeface and type size required for the hurricane deductibles in insurance policies. However, another panel of this Court has already certified both of these questions to the Florida Supreme Court, Chalfonte Condominium Apartment Ass'n, Inc. v. QBE Ins. Corp., 561 F.3d 1267, 1274-75 (11th Cir. 2009), and we reserve judgment on them until the Florida Supreme Court has definitively answered the questions.

applying prejudgment interest in the amended final judgment. We affirm the district court's denial of QBE's motion for a new trial and reserve judgment on the two issues raised on cross-appeal.

**REVERSED in part, AFFIRMED in part, and REMANDED in part for proceedings consistent with this opinion.**