688 So.2d 1293 (1997)
Nichole RIVERE
v.
Frederick HEROMAN, as Administrator of the Estate of his minor son, Frederick Heroman, Jr., and Interstate Fire & Casualty Company.
No. 96-CA-1568.
Court of Appeal of Louisiana, Fourth Circuit.
February 5, 1997.
*1294 William E. Willard, Lindsey J. Leavoy, Powers, Clegg & Willard, Baton Rouge, for Defendant-Appellee Mount Vernon Fire Insurance Co.
Scott G. Jones, Hulse & Wanek, New Orleans, for Defendant-Appellant Continental Casualty Company.
Before KLEES, LOBRANO and ARMSTRONG.
KLEES, Judge.
Appellant Continental Casualty Company (Continental) appeals the judgment of the district court that its insurance policy shall provide the second layer of coverage for damages resulting from the automobile accident which is the subject of this case. After reviewing the record, we affirm.
The present case arises from an automobile accident that occurred on June 8, 1992, in Orleans Parish. The vehicles involved were one being driven by plaintiff Nichole Rivere and another owned by John Brantley and driven by the minor son of Frederick Heroman.
At that time, three insurance policies provided applicable coverage for this accident. The first policy was one issued by the Interstate Fire and Insurance Company (Interstate) to John Brantley, owner of one of the cars. This policy provided $100,000.00 in Basic Automobile and Physical Damage coverage.
The second policy was that issued by Continental. This was a Universal Security Special Policy issued to Frederick Heroman, father of the minor who was driving Brantley's car at the time of the accident. Continental's policy provided $500,000.00 in coverage.
The third policy was issued by appellee Mount Vernon Fire Insurance Company (Mount Vernon) to John Brantley. This was an Automobile Liability Excess Indemnity Policy, which provided $150,000.00 in coverage.
Plaintiff filed suit in the Civil District Court. All parties agreed that Interstate's policy would provide the first layer of coverage; plaintiff Rivere then settled her case with Interstate and dismissed them from the present suit. Continental and Mount Vernon then filed cross motions for summary judgment, to determine which policy would provide the second layer of coverage. Mount Vernon asserted that its policy was an excess policy, and therefore one that should only be drawn upon after all other sources of coverage have been exhausted. The court agreed with this position, and held that Continental's policy would provide the next layer of coverage. It is from this finding that Continental appeals.
Continental argues that Mount Vernon's policy is not an "umbrella" policy, but rather a "follow form" policy; An "umbrella" policy is one designed to guard against catastrophic loss; a "follow form" policy does not have such extreme requirements, but designates a policy that simply follows the conditions and agreements of an underlying policy.
The Mount Vernon policy does indeed include this language:
"1. Application of Primary Insurance; Newly Acquired Additional Automobiles: This policy, except where a provision to the contrary appears herein, is subject to all the conditions, agreements, exclusions and limitations of and shall follow the Primary insurance in all respects ..."
Continental is therefore correct in its assertion that the Mount Vernon policy is a "follow form" policy rather than an "umbrella" policy. However, this classification does not alter the fact that even this "follow form" policy is still an excess policy.[1]
*1295 The status of the Mount Vernon policy can be determined from two factors. Of importance are the relative sizes of the premiums involved. Interstate's annual premium was $2,568.00. Continental's premium for auto insurance coverage was $4,594.00. The Mount Vernon premium was only $450.00. The relative sizes of the premiums reflect the roles of the various policies.
The very nature of excess insurance coverage is such that a predetermined amount of underlying primary coverage must be paid before the excess coverage is tapped. The existence of the underlying primary insurance both reduces the risk assumed by the excess insurer and translates into a reduced premium for the insured; the reduced premium reflects the parties' intent that the excess coverage attaches only after a predetermined amount of primary coverage has been exhausted. Maynor v. Vosburg, 648 So.2d 411, 423 (La.App. 2 Cir.1994), writ denied, 95-0409 (La.4/28/95), 653 So.2d 590.
Even more importantly, the Mount Vernon policy requires an underinsurer. In its insuring agreement, Mount Vernon explicitly states that the policy holder must have a primary insurance policy; the Mount Vernon policy is never to be involved unless damages against the policy holder are in excess of the limits of this underlying insurance. The Continental policy has no such provisions, only an "other insurance" clause, which states that this policy becomes excess over other collectible insurance. However, such a clause cannot convert a true excess policy into a primary insurer.
In Dean v. State Farm Mut. Auto. Ins. Co., 518 So.2d 1115, (La.App. 4 Cir.1987), writ denied, 522 So.2d 1096 (La.1988), this court dealt with a similar issue, weighing policies with underlying coverage against others which, while requiring no such outside coverage, contained "other insurance" clauses similar to Continental's. The Dean court examined the policies with "other insurance" clauses and stated:
"Our reading of the two insurance policies... convinces us that they provide primary coverage for auto liability with that coverage modified to become excess with respect for autos covered by the policy but not owned by the insured. We base this conclusion on the clear language of the policies ... and the absence in the policies of any requirement for any underlying insurance coverage to which either of these policies could be considered truly excess." Dean at 1117-1118.
The court went on to declare that the lack of a requirement for underlying coverage defeated any argument that such an "other insurance" clause converted a primary policy into a true excess policy, and that primary policies must be exhausted before any true excess policies can be tapped to provide coverage.
Continental asserts that the Dean case is meant to apply only to "umbrella" policies, and that the court simply confused the terms "umbrella" and "excess." We disagree. While the particular policy involved in that case was an "umbrella" policy, the reasoning of this court in that case did not apply to "umbrella" policies alone, but to all true excess policies. The determinative factor was the requirement for underlying insurance coverage; this was felt to best indicate the policy's nature and the intent of the parties as to this policy's role. We find this reasoning valid, and find that it applies equally to any true excess policy, regardless of whether it is an "umbrella" policy or not.
Since the Mount Vernon policy is a true excess policy, it should not be drawn upon unless the damages exceed all preexisting primary coverage. The trial court properly designated the Continental policy as the second layer of coverage, and its judgment is therefore affirmed.
AFFIRMED.
NOTES
[1] Even in Continental's own exhibit, The Additional Insured Book, such a policy is defined as an "Excess Liability Follow-Form Policy."