DAMOORGIAN, J.
Florida Insurance Guaranty Association (“FIGA”) appeals from a final judgment confirming an appraisal award arising out of an insurance policy between FIGA and Somerset Homeowners Association, Inc. (“Somerset”). FIGA raises a number of issues on appeal. FIGA argues, among other things, that the trial court erred by awarding Somerset replacement cost value (“RCV”) benefits. We agree and reverse on that one issue, but affirm the final judgment in all other respects.
By way of background, the Somerset condominium buildings sustained extensive damage due to two hurricanes. Somerset was covered by an insurance policy, the obligations for which were assumed by FIGA after the original carrier was placed in receivership. Somerset submitted claims for coverage, and both the former carrier and FIGA made partial payments on the claims. However, believing that more was owed, Somerset instituted suit to enforce the appraisal process.
While the suit was pending, the parties agreed to submit the dispute over the amount of the claim of loss to the appraisal process set forth in the policy. The appraisal process provided a series of steps, none of which are relevant to our discussion. Ultimately, the claim was submitted to an independent umpire who entered an award which set the RCV of the loss at $12,581,471.43 and the actual cash value (“ACV”) of the loss at $11,630,208.55. “ ‘As replacement cost policies are intended to operate, following a loss, both actual cash value and the full replacement cost are determined. The difference between those figures is withheld as depreciation until the insured actually repairs or replaces the damaged structure.’ ” Goff v. State Farm Fla. Ins. Co., 999 So.2d 684, 690 (Fla. 2d DCA 2008) (citation omitted).
FIGA neither timely paid nor disputed the award. Somerset moved to confirm the appraisal award, prompting FIGA to move to vacate it. The court entered a final judgment in the amount of $6,262,339.83, which reflected a deduction of $5,026,539.25 in prior payments and a deductible of $1,292,592.35.
On appeal, FIGA argues that contrary to the express terms of the policy, the appraisal award included $951,262.88 attributed to depreciation. Somerset counters that it was entitled to depreciation under the doctrine of prevention of performance because FIGA failed to timely pay the appraisal award.
Our analysis of this issue necessarily requires us to turn to the plain language of the policy. See State Farm Mut. Auto. Ins. Co. v. Menendez, 70 So.3d 566, 569 (Fla.2011) (“In interpreting an insurance contract, we are bound by the plain mean *852 ing of the contract’s text.”); see also Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla.1993) (“Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties.”). The policy provided:
d. We will not pay on a replacement cost basis for any loss or damage:
(1) Until the lost or damaged property is actually repaired or replaced; and
(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.
Under the terms of the policy, an insured must actually repair or replace the damage as a condition precedent to payment of replacement costs. Somerset failed to do so in this case.
Notwithstanding the policy’s express terms, Somerset argues that under the doctrine of prevention of performance, it was excused from the contractual obligation to complete the repairs before receipt of payment because FIGA delayed payment of the appraisal award.[1] In support of this argument, it cites to the decision of the federal district court in Buckley Towers Condominium, Inc. v. QBE Ins. Corp., No. 07-22988-CV, 2009 WL 1492019 (S.D.Fla. May 27, 2009) (hereinafter “Buckley I”). In Buckley I, the insured sued its insurer, and after a trial, the jury awarded the insured nearly $20 million in damages. Buckley I, 2009 WL 1492019, at *1. The insurance contract required that an ACV claim be filed before the insured could recover RCV payments. Id. Although the insured made no repairs, the district court held that the doctrine of prevention of performance permitted Buckley Towers to recover RCV benefits. Id. at *2.
On appeal, however, the Eleventh Circuit Court reversed, concluding that the district court erred by allowing the insured to claim RCV damages, when under the express terms of the contract, the insured had to repair or replace the damaged property before it was entitled to payment. Buckley Towers Condo., Inc. v. QBE Ins. Corp., 395 Fed.Appx. 659 (11th Cir.2010) (hereinafter “Buckley II ”). In so holding, the court noted:
Applying the doctrine of prevention of performance in this case would imper-missibly rewrite the insurance contract on the equitable theory that it would be too costly for Buckley Towers to comply with the terms of the agreement. Under Florida’s binding law, however, courts are not free to rewrite the terms of an insurance contract and where a policy provision “is clear and unambiguous, it should be enforced according to its terms.”
Id. at 663 (quoting Acosta, Inc. v. Natl Union Fire Ins. Co., 39 So.3d 565, 573 (Fla. 1st DCA 2010)); see also Ceballo v. Citizens Prop. Ins. Corp., 967 So.2d 811, 815 (Fla.2007) (explaining that with contracts, replacement cost damages do not arise unless the repairs or replacement have been completed); State Farm Fire & Cas. Co. v. Patrick, 647 So.2d 983, 984 (Fla. 3d DCA 1994) (holding that the trial court erred by ignoring the plain language of the replacement cost policy issued to the insured).
We concur with the reasoning in Buckley II and adopt its holding in the instant case. Somerset’s suggestion that we adopt *853 the decision of a lower court, when that decision has been overturned by a higher court, finds no support here. The case is remanded to the trial court to deduct from the final judgment the amount attributed to depreciation.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

WARNER and GERBER, JJ., concur.

. Under the doctrine of prevention of performance, "one who prevents the happening of a condition precedent upon which his liability is made to depend, cannot avail himself of his own wrong and thereby be relieved of his responsibility to perform under the contract.” Ward v. Branch, 429 So.2d 71, 74 (Fla. 4th DCA 1983).