LaROSE, Judge.
Axis Surplus Insurance Company f/k/a Sheffield Insurance Corporation appeals the order granting final summary judgment to Caribbean Beach Club Association, Inc., on its claim for insurance proceeds. Caribbean claimed entitlement to those proceeds for the increased cost of construction of its time-share property. We affirm and write to explain how Axis waived a two-year limitation period on Caribbean’s claim.
Caribbean is a time-share condominium in Fort Myers Beach. A fire swept through the property in April 2003. Caribbean had insurance through Axis; fire was a covered peril. The policy limited damages resulting from the enforcement of an ordinance or law. Consequently, Caribbean paid an additional premium for coverage through an Ordinance or Law Coverage endorsement. Thus, if Caribbean incurred a loss from a covered peril, the *686 endorsement provided coverage for up to $2,500,000 for the increased cost of construction incurred as a result of the enforcement of an ordinance or law. The endorsement provides, in relevant part, as follows:
b. With respect to the Increased Cost of Construction:
(1) We will not pay for the increased cost of construction:
(a) Until the property is actually repaired or replaced, at the same or another premises; and
(b) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.
Axis first inspected the damaged property on May 1, 2003. Axis and Caribbean knew that Lee County might enforce the “50% rule” contained in its ordinances. The 50% rule mandates that if a building is more than 50% damaged, any reconstruction or repair must comply with current building codes. If Lee County enforced the 50% rule, Caribbean would have to raise the entire building to meet existing flood elevation requirements. '
Caribbean and Axis cooperated in a common goal of repairing, not replacing, the damaged building; they tried to convince Lee County not to enforce the 50% rule. Unfortunately, in November 2004, some nineteen months after the fire, Lee County informed Caribbean and Axis that it would enforce the 50% rulé. Consequently, Caribbean would be required to replace its building to satisfy current flood elevation codes.
Axis and Caribbean continued to cooperate. Axis estimated that replacement would take about another twelve months, through the end of 2005. Axis engaged a contractor who prepared a $2.8 million estimate for replacement. Axis certainly knew, that Caribbean intended to replace the building and expected Axis to pay the full cost, including any cost to comply with current building codes.
There seems to be no dispute that Caribbean acted reasonably and diligently in attempting to repair or rebuild the property. As late as early June 2005, Axis remained prepared to pay the full replacement cost and continued to adjust the claim. The tide turned in late June 2005, when, for the first time, Axis told Caribbean that it would rely on the two-year clause in the Ordinance or Law Coverage endorsement to deny payment for increased construction cost because the replacement was not completed. Except for a general, nonspecific, reservation of rights letter, Axis never raised the two-year clause previously with Caribbean.
Ultimately, .Axis tendered the actual cash value amount of insurance proceeds but refused to tender any payments for the increased cost of construction due to code compliance. Our record discloses no evidence that the cost of reconstructing the building increased in any way due to the delay in obtaining a construction' permit or completing construction.[1]
Caribbean sued Axis for reimbursement of the increased cost of construction under the Ordinance or Law Coverage endorsement. In its summary judgment motion, Caribbean argued that the two-year clause was inapplicable through the doctrines of waiver, estoppel, impossibility, and lack of prejudice/immateriality. In opposition, Axis argued that the two-year clause was not a forfeiture provision that triggered *687 application of Caribbean’s theories, but, rather, some inchoate coverage provision that would spring into existence only upon actual repair or replacement of the property. The trial court agreed with Caribbean, concluding, in part, as a matter of law, that the two-year clause was a forfeiture provision, a provision that Axis waived. Caribbean and Axis stipulated that the increased cost of construction was $1,800,000.
Waiver cannot create coverage. Unijax, Inc. v. Factory Ins. Ass’n, 328 So.2d 448, 455 (Fla. 1st DCA 1976). Provisions that forfeit insurance coverage, however, can be waived by the insurer’s conduct. Lloyds Underwriters at London v. Keystone Equip. Fin. Corp., 25 So.3d 89, 92 (Fla. 4th DCA 2009). Characterization, therefore, is critical. A forfeiture occurs when the loss was covered in the first instance and has been lost by the insured’s actions or inactions. Id.
Generally, “clauses that are inclusionary or exclusionary, that outline the scope of coverage, or that delineate the dollar amount of liability” are described as pertaining to coverage, while “forfeiture clauses often include provisions such as filing a timely notice of claim and submitting proofs of loss, and are invoked to avoid liability for existing coverage.” Creveling v. Gov’t Employees Ins. Co., 376 Md. 72, 828 A.2d 229, 244-45 (2003).
Id. at 92-93.
The two-year clause falls in the latter category. It outlines neither the covered scope of loss nor dollar limits of coverage; rather, it imposes post-loss procedural requirements with which the insured must comply to receive payment for existing coverage. The increased cost of construction resulting from the enforcement of an ordinance or law “was plainly covered by the policy and a risk for which a premium was paid.” Id. at 93. The Ordinance or Law Coverage endorsement “provide[d] for the loss, or forfeiture, of that coverage should the insured fail to behave in a particular manner and comply with its provisions.” See id. Caribbean paid an additional premium for expanded coverage. The coverage evaporated when, through no fault of its own, Caribbean could not complete the replacement building within two years from the date of loss. Axis tardily invoked the two-year clause to avoid liability for an existing coverage. This was a forfeiture. See id. at 92-93.
Florida law abhors forfeitures. Johnson v. Life Ins. Co. of Ga., 52 So.2d 813, 815 (Fla.1951); Am. Fire & Cas. Co. v. Collura, 163 So.2d 784, 791 (Fla. 2d DCA 1964); Boca Raton Cmty. Hosp., Inc. v. Brucker, 695 So.2d 911, 912 (Fla. 4th DCA 1997). As a result, “[i]f an insurer intends to stand on any forfeiture reservation, it, should inform the insured as soon as practicable after it has ascertained facts upon which it bases its forfeiture.” Tiedtke v. Fid. & Cas. Co. of N.Y., 222 So.2d 206, 209 (Fla.1969). It is equally well established that “when an insurer has knowledge of the existence of facts justifying a forfeiture of the policy, any unequivocal act which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture, will constitute a waiver.” Johnson. 52 So.2d at 815.
Precise precedent is scant. What little there is seemingly supports Caribbean. For example. Edgewood Manor Apartment Homes LLC v. RSUI Indemnity Co., 782 F.Supp.2d 716, 723, 729 (E.D.Wis. 2011), involved a similar policy provision. Although Edgewood Manor concluded that the insured’s failure to make repairs within two years of the loss precluded recovery, the court observed that the increased cost of construction was covered under the policy. Id. at 729. Edgewood Manor sup *688 ports the conclusion that the two-year clause operated as a forfeiture against Caribbean.
Monarch, Inc. v. St. Paul Property & Liability Insurance Co., No. 03-CV-0054, 2004 WL 1717618 (E.D.Pa.2004), is also instructive. A fire damaged the insured’s property. Id. at *1. The insured claimed damages, including code upgrade costs. Jd The insured contended that the insurer breached the contract by failing to pay for code upgrades. The insured had not repaired or replaced the building. Id. at *2. The court ruled that “[i]t [wa]s not neces-' sary to reach the question of whether the two-year time limitation was waived” and enforced the requirement that the insured actually repair or replace the building before the insurer had to pay. Id. at *2 n. 5, *3. Monarch is distinguishable because Caribbean replaced its building. Like Edgewood Manor, however, Monarch suggests that the two-year clause is waivable.
Axis relies on Snoqualmie Summit Inn, Inc. v. Travelers Property & Casualty Co. of America, No. CV06-0517 MJP, 2007 WL 709297 (W.D.Wash.2007), claiming that the court treated a similar provision as a coverage provision not subject to waiver, but for reasons different from those asserted here. The policy provided for payment of “the replacement cost ... as of the time of loss or damage [including] the increased cost to repair, rebuild or construct the property caused by enforcement of building, zoning or land use ordinance or law.” Id. at *2. The insured did not rebuild the damaged property but purchased a replacement property and sought reimbursement for replacement cost, including increased construction costs under building codes enacted after the date of loss. Id. at *1. The court stated:
It would be illogical for Plaintiff to receive additional funds to pay for the increased cost of construction when nothing is actually built.... It would also be illogical for Plaintiff to receive additional funds when Plaintiff has not cited any ordinance or law that has caused an increase in the cost of reconstruction.
Id. at ⅜5. Snoqualmie is inapplicable. It did not turn on whether a two-year clause was a forfeiture provision or a coverage provision. Rather, the insured received no payment for damage from the enforcement of an ordinance or law because it incurred none. Id. In contrast, Caribbean replaced its building and incurred increased costs of construction required by ordinance. The delay in rebuilding was linked, in large part, to efforts by
Axis and Caribbean to convince Lee County not to enforce its 50% rule, efforts designed to help Axis limit the costs it contractually anticipated having to pay. Axis also relies on a trial court judgment in Orleans Parish School Board v. Lexington Insurance Co., 2006-7342 (Dist. Ct., Orleans Parish, La.2012), to support its argument that the policy provides no coverage until repair or replacement is complete. Both the trial court order and a subsequent appellate decision stated that the policy endorsement did not provide coverage beyond the two-year time frame, but neither decision stated that coverage did not arise until the insured completed repairs or replacement. Id.; Orleans Parish Sch. Bd. v. Lexington Ins. Co., 118 So.3d 1203,1211,1219 (La.App. 4 Cir.2013) (Orleans II). In fact, the appellate court indicates that the two-year clause is a forfeiture provision that the insurer could waive. Id. at 1219.
Orleans II discusses the doctrine of waiver at length, never stating that this doctrine is inapplicable to the two-year clause. Id. at 1219-23. Apparently, the insurer never waived the two-year provision; the insured offered no contrary evi *689 dence. Id. at 1219. This does not mean that the clause could never be waived; it means only that the requirement was not waived in that case. Notably, Orleans II explains that there was no waiver because the insurer expressly reserved its rights in its reservation of rights letter, citing specifically to the ordinance or law endorsement. Id. at 1221. Unlike our case, the insurer in Orleans II fairly apprised the insured of its intent to rely on the ordinance or law endorsement. Id. Notably, under Florida law, an insurer, through its conduct, can waive its right to enforce a forfeiture provision even if it has provided a reservation of rights letter or has a nonwaiver clause in - the policy. Queen Ins. Co. v. Patterson Drug Co., 73 Fla. 665, 74 So. 807, 809 (1917).
Axis’s failure to bring the provision to Caribbean’s attention despite knowing that Caribbean expected the entire claim to be paid and Axis’s continued adjustment of the entire claim after the two-year period expired were unequivocal acts wholly inconsistent with invoking a forfeiture. Axis waived the two-year limitation. See Johnson, 52 So.2d at 815.
To avoid liability through forfeiture, Axis must demonstrate that it was substantially prejudiced by Caribbean’s noncompliance with the two-year clause. See Ramos v. Nw. Mut. Ins. Co., 836 So.2d 71, 75 (Fla.1976). “Only that failure which constitutes a material breach and substantially prejudices the rights of the insurer in defense of the cause will release the insurer of its obligation to pay.” Id. As noted earlier, our record is devoid of any prejudice suffered by Axis.
The trial court correctly found as a matter of law that the two-year clause was a forfeiture provision waived by Axis. When an insurer acquiesces to an insured’s failure to strictly adhere to a timetable of payment or performance, courts are inhospitable to the insurer’s sudden invocation of strict enforcement of forfeiture provisions. See Restatement (Second) of Contracts: Excuse of a Condition to Avoid Forfeiture § 229 note on cmt. c (1981).
As a result, Caribbean is entitled to receive the increased cost of construction in the stipulated amount of $1,800,000.
Affirmed.
VILLANTI and BLACK, JJ., Concur.

. Florida’s Department of Environmental Protection and Lee County issued permits in July 2006. The building was completed in • late February 2008.