[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11612

Non-Argument Calendar

_____

METAL PRODUCTS COMPANY, LLC,

Plaintiff-Appellant,

*versus*

OHIO SECURITY INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:19-cv-00489-TKW-MJF

_____

Before WILLIAM PRYOR, Chief Judge, WILSON, and BRASHER, Circuit Judges.

PER CURIAM:

Metal Products Company, LLC, appeals the summary judgment in favor of its insurer, Ohio Security Insurance Company. Metal Products filed a claim for hurricane damage to the exterior and interior of its two buildings, but it received payment only for wind damage to the roof of one building. Metal Products sued Ohio Security for breach of contract for failing to pay the replacement cost damages for both buildings, and the insurer removed the action to federal court, 28 U.S.C. § 1332. The district court ruled that Metal Products was not entitled to replacement costs for buildings it had not repaired and that damage to the interior of one building was excluded from coverage. We affirm.

Ohio Security issued a commercial general liability policy to Metal Products that covered "direct physical loss of or damage to" its buildings in Marianna, Florida. Metal Products obtained coverage of $1,335,395 for building 1 and $223,098 for building 2, subject to separate deductibles for windstorm damage, respectively, of $66,769.75 and $11,154.90. The windstorm endorsement stated that Ohio Security would "not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible." The policy also excluded from coverage "loss or damage caused by or resulting from" "[w]ear and tear" and "[r]ust, or other corrosion,

decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself."

The policy stated that Ohio Security had the "option . . . [to] either" "[p]ay the value of" or "the cost of repairing or replacing the lost or damaged property" "[a]t [its] actual cash value as of the time of loss or damage." If Metal Products "elect[ed] to have loss or damage settled on an actual cash value basis, [it could] still make a claim for" replacement cost. Metal Products had to give "noti[ce] . . . of [its] intent to do so within 180 days after the loss or damage and then "[r]eplacement Cost (without deduction for depreciation) replace[d] Actual Cash Value [as] the [type of] Valuation . . . ." But "no[] pay[ment] . . . [of the] replacement cost basis" occurred "[u]nless the repairs or replacement [were] made as soon as reasonably possible after the loss or damage" and "[u]ntil the lost or damaged property [was] actually repaired or replaced."

Metal Products timely filed a claim for coverage for damage to its two buildings from Hurricane Michael. The company submitted an estimate from RestoreMasters Contracting LLC that calculated a total "Replacement Cost Value" of $818,745.12. The estimate described repairs needed for the roofs of both buildings and for the interior of building 1 caused by water intrusion. The estimate quoted identical replacement costs and actual costs for the repairs and contained no deduction for depreciation.

Ohio Security determined that the policy covered some damage to both buildings based on reports prepared by an engineering firm and a consultant, which were provided to Metal

Products. The insurer paid Metal Products $61,717.44 for lost income and the actual cash value of wind damage to building 2, but paid nothing for building 1 because its windstorm deductible exceeded its damages. Ohio Security determined that the interior damages to building 1 were excluded from coverage due to wear and tear and deterioration of the roofing systems.

Metal Products complained that Ohio Security breached its contract by "refus[ing] to reimburse . . . adequately for damages" from a "hurricane event." Ohio Security answered that Metal Products was not entitled to replacement cost damages because it had made no repairs to its property and that the interior damages to building 1 were excluded from coverage as caused by wear and tear and deterioration. During discovery, Metal Products demanded "$740,820.47 in indemnity" based on the RestoreMasters estimate, which it admitted did not account for depreciation. Metal Products also admitted it had made no repairs to its buildings.

Ohio Security moved for summary judgment and argued there could be no breach of contract because undisputed evidence established that Metal Products made no repairs, as required to obtain replacement costs. Metal Products responded that summary judgment was inappropriate because factual disputes existed about actual cash value and the amount of loss and about the cause of the interior damage to building 1. Ohio Security replied that Metal Products requested replacement costs to which it was not entitled and that the interior damage to building 1 was not covered under the policy because its engineer's report established, without

dispute, that water entered the building due to the deterioration of the roof.

The district court entered summary judgment in favor of Ohio Security. The district court ruled that Metal Products "present[ed] [no] expert testimony or other evidence contradicting the engineer's opinions regarding the damage to the buildings" and "there [was] no evidence from which a reasonable jury could find" that Ohio Security breached its contract by refusing to pay interior damage not covered under the insurance policy. The district court also ruled that Ohio Security "did not breach the insurance policy by failing to make additional payments to [Metal Products] based on [its] RestoreMasters RCV estimate" because "it is undisputed that [the company] ha[d] not repaired the damage to the property as required for payment of RCV." The district court "did not overlook that the RestoreMasters' estimate included a column titled ACV," but found "it . . . undisputed that those amounts were not ACVs because they are the same as the corresponding amounts in the RCV column and the RestoreMasters' estimate did not include any amounts for depreciation."

We review *de novo* the summary judgment in favor of Ohio Security. *Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1348 (11th Cir. 2017). "In so doing, we view all of the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.* (internal quotation marks omitted). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under Florida law, which the parties agree applies, "insurance contracts are construed according to their plain meaning." *Zucker*, 856 F.3d at 1348 (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005)). When "a policy provision is clear and unambiguous, it should be enforced according to its terms" and we "may not rewrite" it. *Taurus Holdings*, 913 So. 2d at 532.

Ohio Security did not breach its contract with Metal Products. Metal Products submitted an estimate that calculated the replacement cost damages to its buildings. The insurance policy states that no payment is made on a claim for replacement cost value "[u]ntil the lost or damaged property is actually repaired or replaced." So "[u]nder the terms of the policy, [Metal Products had to] actually repair or replace the damage as a condition precedent to payment of replacement costs." *Fla. Ins. Guar. Ass'n v. Somerset Homeowners Ass'n, Inc.*, 83 So. 3d 850, 852 (Fla. Dist. Ct. App. 2011). Because Metal Products made no repairs, Ohio Security was not obligated to pay the replacement cost value of the buildings. *See id.; Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007) ("[C]ourts have almost uniformly held that an insurance company's liability for replacement cost does not arise until the repair or replacement has been completed.") (quoting *State Farm Fire & Cas. Co. v. Patrick*, 647 So. 2d 983 (Fla. Dist. Ct. App. 1994)).

Metal Products argues that "the true issue in [the] case . . . was the amount of loss" and the "refusal [by Ohio Security] to make an additional actual value payment," but the company demanded only replacement cost damages. Metal Products submitted only an estimate from RestoreMasters to support its claim for coverage. And that estimate calculated only replacement cost damages. Metal Products could not change the nature of its demand for payment by asserting, in its opposition to summary judgment, that its estimate "contain[ed] both ACV and RCV values."

Metal Products also argues that it was unfairly prejudiced when the district court ruled on the issue of causation when it was not raised initially by Ohio Security, but we disagree. Metal Products raised the issue of causation in its opposition to summary judgment and invited the court to address the issue. Metal Products attached to its opposition the engineer's report prepared for Ohio Security. That report attributed damage to the interior of building 1 to "structural settlement" and "age related deterioration." Metal Products was not prejudiced when Ohio Security cited the same report in its reply as evidence establishing, without dispute, that damage to the interior of building 1 was attributable to deterioration and excluded from coverage under the policy. The district court committed no error when it addressed the issue of causation.

We **AFFIRM** the summary judgment in favor of Ohio Security Insurance Company.