DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY,**
Appellant,

v.

**IRMA QURESHI** and **GEORGE GUERRERO,**
Appellees.

No. 4D2023–1338

[July 24, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David A. Haimes, Judge; L.T. Case No. CACE21007238.

Kara Rockenbach Link and David A. Noel of Link & Rockenbach, PA, West Palm Beach, for appellant.

Elliot B. Kula and William D. Mueller of Kula & Associates, P.A., Miami, for appellees.

ARTAU, J.

This case requires us to address the measure of damages recoverable for the breach of a replacement cost property insurance policy. We conclude that the trial court erroneously allowed the jury to consider evidence of the estimated cost to repair items damaged by a covered loss because Irma Qureshi and George Guerrero ("the insureds") sold the property before making the repairs. We therefore reverse and remand for a new trial on the issue of damages. In so doing, we certify conflict with *Citizens Property Insurance Co. v. Tio*, 304 So. 3d 1278 (Fla. 3d DCA 2020).

### *Background*

A jury awarded the insureds $57,836.83 in damages on their claim that Universal Property & Casualty Insurance Company ("Universal") breached some but not all of the coverage terms of the insureds' property insurance policy by paying them only the $10,000 policy limit for damage caused by mold without including payment for the damage caused by the water leak at the property that resulted in the mold. However, the insureds never

repaired the damaged items described in an estimate they had submitted for reimbursement from Universal prior to selling their property.

Before trial, Universal moved in limine to preclude the insureds from presenting any evidence related to either the cost of any repairs not performed prior to their sale of the property, or any diminution in value to the property resulting from the covered loss. Universal argued that the evidence it sought to exclude was irrelevant to calculating the damages awardable for the claimed policy breach because the policy's loss settlement terms neither required Universal to pay any amount to the insureds for "diminution in value" caused by a covered loss, nor required Universal to pay for repairs that were never made—and now cannot be made given the insureds' sale of the property prior to trial.

The policy's loss settlement terms, upon which Universal relied in support of its motion in limine, provided that "the valuation of any covered property losses" could not include, and Universal would not pay, "any amount for 'diminution in value,'" defined in the policy as "any reduction in value of any covered property prior to or following repair or replacement as compared to the value of that property immediately before the loss." The policy's loss settlement terms also included a provision tracking the language of section 627.7011(3)(a), Florida Statutes (2020), which provides that, in the event of a loss for which a dwelling is insured on the basis of replacement costs, "the insurer must initially pay at least the actual cash value of the insured loss, less any applicable deductible," and "shall pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred."

The trial court granted Universal's motion in limine with respect to any evidence of a diminution in the property's value, but otherwise denied the motion, thereby allowing the insureds to present evidence concerning the estimated cost for damages caused by the loss despite the insureds' failure to perform any of the repairs or incur any of the estimated expenses.

At trial, Universal renewed its motion in limine and objected to the insureds' introduction into evidence of the estimate reflecting the repair costs for the damaged items that the insureds neither repaired nor replaced prior to their sale of the property. Universal argued that the estimate should not be considered by the jury because the insureds never made the repairs reflected in the estimate and could no longer make the repairs given their sale of the property. However, the trial court denied Universal's renewed motion.

2

Thereafter, Universal moved for a directed verdict and for a new trial, which the trial court denied, reasserting its argument that the estimate should not have been introduced into evidence.

## *Analysis*

We generally review a trial court's ruling on a motion in limine for abuse of discretion.  *See Dessaure v. State*, 891 So. 2d 455, 466 (Fla. 2004).  However, "[s]uch discretion is limited by the rules of evidence, and a trial court abuses its discretion if its ruling is based on an 'erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Patrick v. State*, 104 So. 3d 1046, 1056 (Fla. 2012) (quoting *McDuffie v. State*, 970 So. 2d 312, 326 (Fla. 2007)).  Furthermore, where the trial court's ruling "presents a question of insurance policy interpretation[,]" our review is de novo.  *Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 437 (Fla. 2013).

Universal argues that the trial court reversibly erred by allowing the insureds to introduce into evidence at trial the estimated repair costs for work that was never performed even though both the policy's terms and section 627.7011(3)(a) require payment by the insurer only "as work is performed and expenses are incurred."  We agree.

Moreover, we reject the dissent's reliance upon *Tio* and the Nebraska Supreme Court's opinion in *D & S Realty, Inc. v. Markel Insurance Co.*, 816 N.W.2d 1 (Neb. 2012), for the circular argument that Universal's failure to tender payment for the estimated damages prevented the insureds from performing the repair work, thereby rendering the policy provision requiring the insureds to perform or incur the expense of the repairs as a condition precedent to payment unenforceable on the equitable theories of waiver or estoppel.

Both the dissent and *Tio* are seemingly at odds with our supreme court's precedent, which has never adopted the view of the Nebraska Supreme Court, as expressed in *D & S Realty, Inc.*

As our supreme court explained in *Doe on behalf of Doe v. Allstate Insurance Co.*, 653 So. 2d 371 (Fla. 1995), "[f]or many years the law in Florida has been 'well established that the doctrine of waiver and estoppel based upon the conduct or the action of the insurer (or an agent) is *not* applicable to matters of coverage as distinguished from grounds for *forfeiture.*'" *Id.* at 373 (quoting *Six L's Packing Co. v. Fla. Farm Bureau Mut. Ins. Co.*, 268 So. 2d 560, 563 (Fla. 4th DCA 1972), *decision adopted by*, 276 So. 2d 37 (Fla. 1973)).  In other words, "while an insurer may be

estopped by its conduct from seeking a *forfeiture* of a policy, the insurer's *coverage* or restrictions on the *coverage* cannot be extended by the doctrine of waiver and estoppel." *Id.*

Accordingly, in similar insurance policy disputes, "[c]ourts have almost uniformly held that an insurance company's liability for replacement cost does not arise until the repair or replacement has been completed." *Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007) (alteration in original) (quoting *State Farm Fire & Cas. Co. v. Patrick*, 647 So. 2d 983, 983 (Fla. 3d DCA 1994)).

Furthermore, "[i]nsurance contracts are construed according to their plain meaning[.]" *Field v. Certain Underwriters at Lloyd's*, 302 So. 3d 930, 932 (Fla. 4th DCA 2020) (quoting *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007)). Thus, "[w]hen the language of an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with [its] plain meaning in order to give effect to the policy as written." *Id.* (citing *Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013)).

As this court has explained, "[c]ourts, without dispute, are not authorized to rewrite clear and unambiguous contracts." *Inlet Colony, LLC v. Martindale*, 340 So. 3d 492, 495 (Fla. 4th DCA 2022) (quoting *Andersen Windows, Inc. v. Hochberg*, 997 So. 2d 1212, 1214 (Fla. 3d DCA 2008)). When construing an insurance policy, as with any other contract, we are required to "consider its plain language and take care not to give the contract any meaning beyond that expressed." *Id.* (quoting *Walker v. State Farm Fire & Cas. Co.*, 758 So. 2d 1161, 1162 (Fla. 4th DCA 2000)). In other words, "courts are not to 'rewrite' insurance contracts and should bear in mind that 'if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision.'" *Acosta, Inc. v. Nat'l Union Fire Ins. Co.*, 39 So. 3d 565, 573 (Fla. 1st DCA 2010) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)).

Here, the insureds' policy is clear and unambiguous. The insureds are not entitled to their repair costs unless and until "work is performed and expenses are incurred."

In *Buckley Towers Condominium, Inc. v. QBE Insurance Corp.*, 395 Fed. App'x 659, 663 (11th Cir. 2010), the United States Court of Appeals for the Eleventh Circuit, applying Florida law and interpreting a similar policy provision, rejected the notion that equitable doctrines could be asserted to expand insurance coverage to require payment before any expenses are

4

incurred for performed repair work on the insured property. As the Eleventh Circuit explained:

> Applying the doctrine of prevention of performance in this case would impermissibly rewrite the insurance contract on the equitable theory that it would be too costly for [the insured] to comply with the terms of the agreement. Under Florida's binding law, however, courts are not free to rewrite the terms of an insurance contract and where a policy provision is 'clear and unambiguous, it should be enforced according to its terms.' Allowing [the insured] to claim [replacement cost] damages without repairing or replacing entirely removes the [insured's] obligations under the [relevant] section of the contract. The parties freely negotiated for that contractual provision and it is not the place of a court to red-line that obligation from the contract.

*Id.* (internal citation to *Acosta*, 39 So. 3d at 573, omitted).

This court expressly adopted *Buckley*'s reasoning in *Florida Insurance Guaranty Ass'n v. Somerset Homeowners Ass'n*, 83 So. 3d 850 (Fla. 4th DCA 2011), where we held that the doctrine of prevention of performance could not excuse an insured from its contractual obligation to first incur expenses for performed repairs that are necessitated by a covered loss before receiving payment for the cost of those repairs. *See id.* at 852–53. We are required to follow *Somerset* here.

In addition, we are required to follow "well established" Florida law rejecting application of the doctrines of waiver or estoppel to create insurance coverage. *See Doe*, 653 So. 2d at 373; *Six L's Packing Co.*, 268 So. 2d at 563. An expansion of insurance coverage—as the dissent argues—to include payment for estimated but not yet incurred repair costs would improperly create insurance coverage by waiver or estoppel contrary to our supreme court's precedent in *Doe* and our precedent in *Six L's Packing Co.*

### *Conclusion*

Because the trial court impermissibly allowed the jury to consider evidence of estimated but not yet incurred repair costs in determining recoverable damages, we reverse and remand for a new trial on the issue of damages. We also certify conflict with the Third District's contrary decision in *Tio*.

On remand, the trial court is directed, consistent with this opinion, to confine the proof at the new trial on damages to only those damages for which recovery is permitted under the policy's clear and unambiguous terms.

*Reversed and remanded with instructions; conflict certified.*

LEVINE, J., concurs.
WARNER, J., dissents with opinion.

WARNER, J., dissenting.

Under the facts of this case, I would apply *Citizens Property Insurance Co. v. Tio*, 304 So. 3d 1278 (Fla. 3d DCA 2020), and affirm.

Universal refused to cover the homeowners' water damage, explaining to the homeowners that the policy excluded coverage for such damage which occurred over months or years. Thus, it rejected coverage for that claim entirely. *See Goldberg v. Universal Prop. & Cas. Ins. Co.*, 302 So. 3d 919, 925 (Fla. 4th DCA 2020). The jury found that Universal breached the insurance policy by denying the water damage claim. The fact that Universal breached the policy by denying a covered claim distinguishes this case from *Buckley Towers Condominium, Inc. v. QBE Insurance Corp.*, 395 Fed. App'x 659 (11th Cir. 2010), *Florida Insurance Guaranty Ass'n v. Somerset Homeowners Ass'n, Inc.*, 83 So. 3d 850 (Fla. 4th DCA 2011), and *Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811 (Fla. 2007).

In *Buckley*, the insurer did not reject the claim but considered the sworn proof of loss to demand replacement cost damages which were not due until repairs were made. 395 Fed. App'x at 661–62. Similarly, in *Somerset*, the insurer did not deny the claim. Instead, the insurer in *Somerset* made partial payments, but the insured sued, claiming more was owed. 83 So. 3d at 851. Thus, neither *Buckley* nor *Somerset* involved the complete denial of coverage. Likewise, *Ceballo*, cited by the majority, also did not involve the complete denial of coverage. Similar to *Somerset*, the insurer in *Ceballo* had advanced significant sums to cover the loss, but the insured sought additional funds under the policy.

Where the insured sues because of a complete denial of coverage, the analysis is different. *Tio* is on point under this circumstance. As the Third District stated in *Tio*:

> Citizens makes the rather creative, though unavailing, argument that, when an insurer wrongfully denies coverage of

6

a claim – causing its insured to file suit against the insurer for breaching the insurance contract – section 627.7011(3) limits the breach of contract damages a jury may award, as if the insurer had not breached the insurance contract. Citizens suggests that, after breaching the policy, it may enforce the terms of the policy at its convenience.

Section 627.7011(3), however, governs an insurer's post-loss obligations in **adjusting and settling claims covered by a replacement cost policy**, and does not operate as a limitation on a policyholder's remedies for an insurer's breach of an insurance contract. Citizens contracted with Tio to provide coverage for a direct loss to property covered by the policy.

304 So. 3d at 1280 (emphasis added).

The majority argues that including the repair costs for unperformed repairs amounts to rewriting the insurance policy. However, as the Third District noted in *Tio*, provisions based on section 627.7011(3) govern an insurer's obligations in adjusting and settling *covered* claims. Here, however, Universal issued a complete denial of coverage. "[T]he effect of an improper denial of coverage may operate to waive an insurer's right to claim as a complete defense that the insureds failed to comply with certain contractual conditions precedent to recovery." *Citizens Prop. Ins. Co. v. Amat*, 198 So. 3d 730, 733 (Fla. 2d DCA 2016). While such a waiver cannot create coverage, "[p]rovisions that forfeit insurance coverage . . . can be waived by the insurer's conduct." *Axis Surplus Ins. Co. v. Caribbean Beach Club Ass'n*, 164 So. 3d 684, 687 (Fla. 2d DCA 2014).

In *Axis Surplus*, the Second District considered a provision stating that the insurer would not pay for increased costs of construction due to enforcement of an ordinance or law, unless the insured actually repaired the property within two years of the loss. *Id.* at 686. The court held that this was a forfeiture provision because "[i]t outlines neither the covered scope of loss nor dollar limits of coverage; rather, it imposes post-loss procedural requirements with which the insured must comply to receive payment for existing coverage." *Id.* at 687. Similarly, in this case, the provision requiring that the homeowners actually incur expenses before receiving repair costs did not create coverage, but imposed post-loss requirements for the homeowners to receive payment for existing coverage.

While the policy only covers the lesser of the replacement cost value or the amount actually spent on repairs, this is also in the context of settling

*covered* losses. As the Nebraska Supreme Court noted in *D & S Realty, Inc. v. Markel Insurance Co.*, 816 N.W.2d 1 (Neb. 2012), the majority view across the country is that a complete denial of coverage waives a policyholder's obligations to make repairs before receiving replacement cost coverage. *Id.* at 13 ("When the insurer, in breach of the insurance contract, denies liability for the insured's loss, most courts conclude that such denial may excuse the insured's duty under the repair/replace condition to replacement cost coverage."); *see also id.* at 13 n.31 (collecting authorities).

In *D & S*, the insured purchased a replacement value insurance policy with a provision that the insurer would pay the actual cash value of the loss, and the insured could seek replacement cost, but the insurer would not be required to pay the replacement cost until after repairs or replacements had been made. *Id.* at 5. The property suffered a loss due to water damage during the policy period, but the insurer denied coverage and did not pay the actual cash value of the loss. *Id.* at 6. The insured brought suit, claiming replacement cost as its damages. *Id.* The case was tried twice, and in the second trial, the insurer moved in limine to prevent the introduction of evidence of replacement cost because the insured had not made the repairs to the property, as the policy required. *Id.* at 8. The court denied the motion and then denied the insurer's motion for directed verdict which claimed that the insured did not prove the actual cash value of the loss and was not entitled to the replacement cost. *Id.* The jury rendered a verdict in favor of the insured for the replacement cost as damages. *Id.* at 9. After post-verdict motions were denied, the insurer appealed. *Id.*

In a well-reasoned opinion, the Nebraska Supreme Court approved the application of the doctrine of prevention where the insurer has denied coverage and concluded that the trial court did not err in denying the insurer's motion in limine:

> When the insurer, in breach of the insurance contract, denies liability for the insured's loss, most courts conclude that such denial may excuse the insured's duty under the repair/replace condition to replacement cost coverage. While other theories are sometimes relied upon, most courts frame the issue in terms of the doctrine of prevention.

*Id.* at 13 (footnotes omitted).

The *D & S* court explained the doctrine of prevention:

> The doctrine of prevention states that where a promisor prevents, hinders, or renders impossible the occurrence of a condition precedent to his or her promise to perform, the promisor is not relieved of the obligation to perform and may not invoke the other party's nonperformance as a defense when sued upon the contract.

*Id.* (citing 13 Samuel Williston, A Treatise on the Law of Contracts § 39:3 (Richard A. Lord ed., 4th ed.2000)). Florida law is in accord. *See Ward v. Branch*, 429 So. 2d 71, 74 (Fla. 4th DCA 1983) ("It is a well-established principle of law that one who prevents the happening of a condition precedent upon which his liability is made to depend, cannot avail himself of his own wrong and thereby be relieved of his responsibility to perform under the contract.").

The *D & S* court also noted that where the insurer has denied coverage, it would be a useless act to require the insured to make repairs when it is undecided whether the insured will ever recover:

> [I]t would be "wasteful [ ] and useless" to require the insured to comply with the repair/replace condition when, by doing so, the insured would not obtain recognition of coverage. The law does not require the doing of a useless act. According to Williston on Contracts, "the performance of a condition precedent is waived where the other party has unequivocally declared by word or act that performance of the condition will not secure performance of the counterpromise."

> Courts have explained that not allowing claims of prevention based on the erroneous denial of coverage would trap the insured "in a no win situation." The insured, in order to recover under the replacement cost coverage he or she purchased, would have to incur the cost of repairs and replacements when there is no guarantee that a future breach of contract action by the insured will be successful.

*Id.* at 14 (second alteration in original) (footnotes omitted).

Additionally, *D & S* considered whether excusing performance should be allowed where the insured may still be able to make repairs, and held that the insured should not be entitled to a benefit for which it did not contract, but at the same time the insurer should not "be permitted to take advantage of the insured's failure to perform a condition precedent under the contract when the insurer has materially contributed to that failure."

9

*Id.* at 18. Similar to this case, the insured in *D & S* had sold the building without repairing it during the pendency of the lawsuit. *Id.* at 8. This did not negate liability on the insurer, as the court held, "if the delay in determining the insurer's liability materially contributed to a situation where the insured can no longer perform the condition after the coverage dispute is resolved, then the condition will be absolutely excused." *Id.* at 18.

The Southern District came to a similar conclusion as *D & S* in *Vantage View, Inc. v. QBE Insurance Corp.*, No. 07–61038–CIV, 2009 WL 536546 (S.D. Fla. Mar. 3, 2009). In *Vantage View*, the insurer argued that it was entitled to a judgment as a matter of law because the jury awarded the estimated cost to repair and replace windows and doors, while the insured had not actually made such repairs, and the policy contained a similar provision as does the instant policy, requiring repairs actually to be made before reimbursement. *Id.* at *1–*2. The Southern District denied the insurer's motion and held that by refusing to advance the insured any funds with which to make repairs, the insurer frustrated the insured's efforts to comply with the requirement to make repairs before seeking RCV damages. *Id.* at *3 ("Defendant failed to provide Plaintiff any funds to allow it to make repairs. By so doing, Defendant frustrated Plaintiff's efforts to make any repairs and prevented Plaintiff's compliance with the replacement cost provision in the policy."). The court further held that the insurer's breach in denying coverage excused the insured from the replacement cost provision of the policy. *Id.* at *4 n.2 ("It is Defendant's actions in breaching the contract that give rise to Plaintiff's ability to avail itself of the replacement cost provision of the policy.").

*Buckley* and *Somerset,* on which the majority relies, concluded that the doctrine of prevention of performance did not apply to those cases' respective policies, which both required the insured to make repairs before the insurer became liable for replacement cost. But neither case involved a complete denial of coverage. That is the distinguishing factor, as in this case, Universal denied coverage entirely and frustrated the homeowners' ability to comply with the policy terms by failing to provide what the policy required, namely the "actual cash value" of the loss.

As the majority opinion requires a new trial, in any new trial replacement cost is still evidence which must be considered. While "actual cash value" is not defined in the policy, "actual cash value is generally defined as 'fair market value' or '[r]eplacement cost minus normal depreciation,' . . ." *Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013). Thus, the replacement cost must be considered together with the depreciation. Universal is not simply liable for the repair costs that

the homeowners made to date, but rather the policy requires that Universal must pay the homeowners the actual cash value of the loss. The homeowners should also be allowed to show that Universal's breach of the policy and refusal to furnish the actual cash value precluded them from making repairs, resulting in them selling the house at a loss.

I agree that the majority opinion is in conflict with *Tio*, and I concur in the certification of conflict to the supreme court.

*   *   *

**_Not final until disposition of timely filed motion for rehearing._**

11